St. Charles Street Railroad Co. vs. Board of Assessors, et als.

## No. 12,754.

THE ST. CHARLES STREET RAILROAD COMPANY VS. BOARD OF ASSESSORS
ET ALS.

### SYLLABUS.

The law requiring franchises to operate street railways, to be taxed according to their value, makes the earning capacity of the corporation a basis for ascertaining the value at which the franchise shall be assessed, but does not exclude reference to other elements that bear directly on the question of that value.   Constitution, Article 203; Act No. 106 of 1890, Ss. 1, 28.

#### ON REHEARING.

(1) Where a settlement of the matter in controversy since the judgment below was rendered appears from papers presented here, and the fact of such settlement is not disputed, effect may be given by this court to the same.
(2) Not deemed necessary in such case to remand.
(3) The question whether or not the city of New Orleans can make, or has made a valid compromise of a tax claim does not properly arise herein.
(4) Proper parties raising such an issue are not before the court.

ON APPEAL from the Civil District Court for the Parish of Orleans.  *Rightor, J.*

*Harry H. Hall* for Plaintiff and Appellant.

*James J. McLaughlin,* Assistant City Attorney, and *Samuel L. Gilmore,* City Attorney, for City of New Orleans, Defendant, Appellee.

*F. C. Zacharie* for Board of Assessors and State Tax Collector, Defendants and Appellees.

Argued and submitted April 5, 1898.
Opinion handed down June 28, 1898.
Rehearing granted, touching alleged agreement between City of New Orleans and Plaintiff, November 21, 1898.
Rehearing refused as to the State of Louisiana December 9, 1898.
Argued and submitted on Rehearing January 13, 1899.
Opinion handed down on Rehearing February 20, 1899.

The opinion of the court was delivered by
MILLER, J.   Plaintiff is the appellant from the judgment denying the reduction claimed of the assessments for taxation for the year 1896, of the plaintiff's franchise for operating a street railway.

Franchises with other property are subjected to taxation by our law, and the actual value of the property is to be ascertained in the mode pointed out by law and exhibited by the assessment. The revenue act, along with the duty to furnish the assessors with the returns of their business and condition, requires from the railway corporations a sworn statement of their earning capacity to serve as a basis to estimate the value of the corporate franchise. Constitution, Article 203, Act of 1890, No. 106, Ss. 1, 28.

In the protest against their franchise assessment of six hundred and fifty-eight thousand, three hundred dollars, the plaintiff claims that the net earnings of their road for 1896 were thirty-six thousand, six hundred and twenty-nine 85-100 dollars, and contend the amount capitalized to produce at six per cent interest *per annum* the sum of thirty-six thousand, six hundred and twenty-nine dollars should be deemed the value of the franchise. On this theory six hundred and ten thousand, four hundred and ninety-seven dollars capitalized, yielding at six per cent thirty-six thousand, six hundred and twenty-nine dollars, is assumed to represent the franchise and all the property of the corporation, and deducting two hundred and ninety-two thousand, eight hundred dollars, the value of the property taxed directly, leaves three hundred and seventeen thousand, six hundred and ninety-seven dollars, which it is insisted, should be accepted as the value of the franchise of a corporation with near a million of capital stock on which it declared a dividend of six per cent. It is stated in the briefs for the assessors, that the plaintiff made no returns of earnings and expenditures. The assessors ascertained the franchise value by capitalizing the amount sufficient to produce the six per cent on the entire stock paid by plaintiff, deducting the value of the property directly taxed, and treating the residue, six hundred and fifty-eight thousand dollars, as the value of the franchise; in other words, the assessors adopted the capital of the company nine hundred and fifty-three thousand, three hundred dollars as representing franchise and property; deducted the value of the property, two hundred and ninety-two thousand dollars, because directly taxed and assessed the residue as the franchise value. The difference between the plaintiffs and the assessors arises from the one insisting on the sum capitalized to produce thirty-six thousand dollars, as measuring the value of property and franchise; and the assessors' adoption of the capital, nine hundred and fifty-three thousand dollars, producing at six per cent. the

St. Charles Street Railroad Co. vs. Board of Assessors, et als.

dividends paid as fairly representing franchise and property. The assessors' method gives six hundred and fifty-eight thousand dollars as the franchise value, that of the plaintiff's three hundred and seventeen thousand dollars.

The proposition of the plaintiffs that net earnings are the test to ascertain the value of the franchise, it is claimed, is supported by the revenue statute. Net earnings are an element in the investigation of that value, but under the statute, is only made "a basis." Dividends imply or are supposed to represent profits, not forced by borrowing or other expedient, to make the sum requisite, and when actually paid from earnings, the dividends furnish a reliable guide to ascertain earning capacity. That guide the assessors followed in this case, that is, the six per cent. dividend paid on nine hundred and fifty-three thousand dollars. We find in plaintiffs' brief the statement that the shortage of earnings in 1896 to pay the dividend was supplied by the sales of stock. It is to be inferred that if one annual dividend is paid by meeting a deficiency of earnings by a sale of the stock of the company, it is because the shortage is accidental, or due to some temporary cause, to account for that departure from the usual course of paying dividends only from earnings of the company. The circumstances under which the stock was sold to pay dividends might not reflect at all on the management of the corporation, or affect the value of its stock or franchise, for the relation between the stock value and that of the franchise is obvious, in the revenue systems of some of the States the excess in the market value of the stock, including the franchise, or stock alone, over the value of the corporate property, being the test to determine the value of the franchise. Hamilton Company vs. Massachusetts, 6th Wallace, 632. It may well be that the assessors in this case, exercising their best judgment, with due regard to all the elements that contribute to franchise value, fixed the valuation exhibited by the assessments. If our law made net earnings the exclusive test as is contended, we should have to apply it, but the law is careful not to use terms that limit the assessors in ascertaining the value of a railway franchise with some years to run, to the earnings of one year, whether due or affected by unexpected losses, accident or other temporary causes. While we attach deserved importance to that influence that actual earnings of the company must exert in fixing the franchise value, and which this court is prepared to enforce, we must recognize that our revenue statute has not imposed on the

assessors that inexorable test that excludes cognizance of all the facts that should contribute in determining franchise value, save and except the test the argument insists is exclusive. Our previous decisions have dealt with other questions arising with reference to franchise assessments; have discarded some tests that have been urged, and have accorded due weight to dividends declared and actually paid from the earnings of the company, but have abstained from maintaining the sole standard the plaintiffs' argument seeks to uphold. Railroad Company vs. City and Board of Assessors, 44th Ann. 1058; Railroad Co. vs. City et als., 44th Ann., 1055; State ex rel Railroad Co. vs. Assessors, 48th Ann. 1157.

We have given attention to the argument that the tax of plaintiffs' franchise is oppressive and violative of the rule of equality. No complaint in this respect can be urged against the law which requires all franchises to be assessed according to their value, and makes earning capacity a basis to ascertain that value. Constitution, Article 123; Act No. 106 of 1890, Ss. 1, 28. The argument rests on the method it is stated the assessors have assessed the franchises of other companies. It is claimed that the assessors, in instances stated in the brief, have not made capital stock to the full extent of the amount on which dividends have been paid, an element in ascertaining franchise value, and that in determining earning capacity of other corporations the assessors have not deemed interest paid on the bonded debts of such corporations the measure, to any extent, of earning capacity. As to interest on the bonded debt, we find the assessors have given to all these corporations the benefit of exclusion of that element, in ascertaining the value of the franchise. Plaintiff has not, it claims, had the same advantage in this particular, because its bonded debt is comparatively small. But it seems to us that these objections to the method of assessing other corporations, in reference to which we feel called on to express no opinion, does not furnish the plaintiff the cause of complaint he urges against the assessment of its franchise, based on the proportionate value of the franchise to that total value on which the company paid its dividend.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be and it is hereby affirmed with costs.

ENTRY ON THE MINUTES NOVEMBER 21ST, 1898.

St. Charles Street Railroad Company,

vs.                                             No. 12,754.

Board of Assessors.

St. Charles Street Railroad Co. vs. Board of Assessors, et als.

It is ordered that the rehearing applied for in this case be granted on the question of the reduction of taxes, in accordance with an agreement claimed to have been entered into, by the parties in interest.

ENTRY DECEMBER 9TH.

It is ordered that the rehearing applied for in this case by the plaintiff be refused so far as it affects the State of Louisiana.

ON REHEARING.

BLANCHARD, J.   Plaintiff Company's street railway franchise was assessed, for the purposes of taxation, at six hundred and fifty-eight thousand, three hundred dollars, for the year 1897.   It contested this assessment, claiming the same was excessive, and prayed its reduction to three hundred and seventeen thousand, six hundred and ninety-seven dollars, which it asserted to be its value, or "to such figure" as the court might decide "to be the true and correct value thereof."

The court of the first instance rejected its demand and maintained the assessment at the sum fixed by the Board of Assessors.

An appeal by the corporation followed and on June 28, 1898, this court handed down its opinion and decree affirming the judgment appealed from.

Whereupon, in an application for a re-hearing filed by the company, it was pointed out that pending the submission of the cause, and while the same was under advisement by this court, plaintiff had settled all taxes claimed of it by the city of New Orleans, and that this was made to appear by the tax receipt presented to the court on the 13th of June and prior to the decision of the cause here.   It was further represented that there had been a failure to give due consideration and proper effect to this settlement in the decision of the court. and because of this, and for other reasons averred, a rehearing was asked.

Acting on this application, the court, on November 21st, 1898, made the following order:

"It is ordered that the rehearing applied for in this case be granted on the question of the reduction of taxes, in accordance with an agreement claimed to have been entered into by the parties in interest."

Subsequently, counsel for the State Tax Collector appeared, and pointing out that the ground upon which alone the rehearing had been granted, applied only to the city of New Orleans, and to the taxes due

to said city, and did not in any manner refer to the State, or to the taxes claimed by the State, asked that the State's interest in the case be excluded from the operation of the order granting the rehearing, and that the application for rehearing as to the State be denied.

The court granted this motion, as follows: "It is ordered that the rehearing applied for in this case by the plaintiff be refused as far as it affects the State of Louisiana."

By this action the judgment of the court, so far as the State was concerned, became final, and what was left of the controversy between plaintiff company and the city of New Orleans alone remained.

It is to that we address ourselves.

We find that the Comptroller of the city, formally authorized thereto by the City Council of New Orleans, has received six hundred and fifty-eight dollars, in full, of balance of city taxes from plaintiff company for the year 1897, having previously received ten thousand dollars, on account of said taxes for that year, and has receipted the company in full as against all demands for city taxes for 1897.

There is no pretense that the city has since rescinded, or attempted to rescind the action thus taken, nor does it appear that any steps have been taken by it or by any other interest to have the same repudiated, overthrown and annulled.

This is not a case wherein the question properly arises whether or not the city can make, or has made a valid compromise of a tax judgment.

When plaintiff company's taxes were paid to the city there was no *final* judgment in favor of the city for any specific amount of taxes, nor has the city been enjoined from receiving any money pursuant to any compromise, nor from carrying out the provisions of any compromise.

Proper parties to raise these questions are not before the court.

The only parties here are plaintiff company and the city, and these two have agreed on a settlement of the taxes in dispute in this case as due the city, and the same have been paid.

The questions of law raised by the City Attorney with reference to this settlement of taxes are not considered before us in proper form for our determination.

Nor is the other question that the rehearing applied for in this case, so far as the State is concerned, having been refused, and the State Tax Collector eliminated thereby from the case, no question of

St. Charles Street Railroad Co. vs. Board of Assessors, et als.

the reduction of assessment can be considered, since the State Tax Collector is a necessary party in suits for the reduction of assessments.

But were this question before us, it suffices to say that the rehearing granted plaintiff, so far as the city of New Orleans is concerned, having been conceded before a rehearing was refused on that part of the case appertaining to the State, it is considered that proper parties appellant and appellee are retained before the court for all purposes necessary to give life and validity to the order granting the rehearing on the city's branch of the case. Surely it is not expected the court will hold it did a certain thing, made a certain order, and then proceeded to do that which renders vain and nugatory the previous order. While the State is eliminated from further concern in the case by the rehearing refused on its branch of the controversy, the Tax Collector is retained on the other branch of the case so far as he may be made by the law, a necessary party to suits of this character.

Neither can the contention of the City Attorney, that the tax receipt produced is in the nature of new evidence not receivable in this court, be maintained. In White vs. Ramsey, 14 La. Ann. 328, a motion was made to dismiss the appeal on the ground of the appellant's voluntary execution of the judgment by its payment after the appeal was granted. The motion alleged payment and the fact of payment was sworn to in an affidavit by plaintiff's authorized agent. It was held the showing of payment could be made in this court, and as it constituted voluntary execution of the judgment, the right of appeal was extinguished, citing C. P. 567.

So, we hold in the instant case that the city's tax receipt in full of all taxes it claims against the appellant, is admissable here to show satisfaction and settlement, so far as this case, as it now stands before us, is concerned.

The city does not deny the payment, and hence there appears to be no reason to remand the case on this ground, to inquire into the fact of payment.

Nothing is intended to be decided and concluded herein except that as the case now stands before us, a settlement of the controversy between the only parties remaining in the litigation appears to have been reached, and, this being so, there is no warrant to maintain the former decree herein handed down against appellant, so far as its tax obligation to the city of New Orleans for the year 1897 is concerned.

30

It is, therefore, ordered that that decree in the particular mentioned, be set aside; the judgment appealed from to that extent be reversed and avoided, and the suit as between plaintiff and the city of New Orleans be dismissed at plaintiff's costs in both courts.

NICHOLLS, C. J., and MILLER, J., dissent.